Thank you, Your Honors. My name is Kirtland Naylor. I represent Officer Copeland in this appeal and I'd like to reserve two minutes for rebuttal. In this case, may it please the court and counsel, in this case the lower court failed to articulate a clearly established right violated in these circumstances that Officer Copeland was confronted with. The U.S. Supreme Court case law establishing that clearly established right. And at the closest, the court mentions Tennessee v. Gardner, but in the recent U.S. Supreme Court case of Molinex v. Luna, the court said that after citing the Gardner deadly force statement of law, that this court summarily reversed holding that the use of Gardner's general test for excessive force was mistaken. The correct inquiry, the court explained, was whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation she confronted, whether to shoot a disturbed felon set on avoiding capture through vehicular flight when persons in the immediate area are at risk. We focus on this case. The district court distinguished this is a case where the individual was shot on two different occasions, correct? Correct. When the first shot, when the individual exited the vehicle, and there there's a factual dispute, isn't there? There So the individual who somehow survived all of this says, I got out of my vehicle with my hands up. The officer disputes that. The district court said, there's a factual dispute on this. I can't resolve it. That, the first shot, needs to go to a jury. What's wrong with that? Well, even assuming that, well, there's two things. One, factually, the expert testimony of the, of Greg Mayer, established, unrebutted, that at the time of the shooting, that Mr. Wade's hands had to have been down because of the trajectory of the bullet in the exit wounds. And the plaintiff expert agrees with that? The plaintiff's expert did not speak to that. So that opinion, and the physical evidence, is unrebutted. There is a still factual dispute in the testimony? Well, with Mr. Wade saying that his hands were up, and even his mother said that his hands were up, but then his mother lost sight of him at the time of the shooting. First shot or second shot? The first. So we're talking about the first shooting. So he says, my hands are up. The expert said, well, physically, or through various examination, that's really not possible given the entry of the bullet wound. Isn't that a factual dispute? You have to believe the expert, because it's not expert A versus expert B. It's the individual versus the expert. And the expert may be totally right, but he just contradicts the testimony, correct? Well, I think it's the Scott v. Henry case that says that if there is no reasonable explanation to corroborate the testimony, then that physical evidence would prevail. And in this case, if you have physical evidence at that very moment that he was shot that rebuts the testimony of the individual, then you're not weighing that evidence. It's been established. So the district court, in your interpretation at that point, could have directed a verdict? Yes. And should have directed a verdict? And should have found that qualified immunity... What's your best case on that? On the qualified... Where you have eyewitness testimony, the individual who was shot testimony, saying, I exited the vehicle and my hands were up, but there's expert testimony saying he couldn't have had his hands up given all of the facts and circumstances. Well, I think it's Scott v. Henry that says that if there is physical evidence that does not cooperate... I'm sorry. You keep saying physical evidence, but it's expert opinion evidence about the physical facts on the ground. To me, that's not physical evidence. Well, it's unrebutted. Well, but it's still just an expert's opinion. But if that expert's opinion is evidence... And it's disputed. It may not be rebutted by another expert, but it's disputed by the sworn testimony of the victim who says, I did have my hands up. I don't care what ballistics experts and mathematicians and statisticians and physicians say. I had my hands up. The jury's entitled to consider that, isn't it? Well, if yes, but in this particular case, all he testified to was that his hands were up, but it isn't clear, even in the record, whether his hands were up by his own statement at the time of the shooting. And that's why juries decide cases in many instances. Well, what I'm saying is, I don't believe that Mr. Wade said specifically at the time that I was shot, my hands were up. So he hasn't technically rebutted... Right, but all inferences are in his favor. I'm looking now back at this Scott v. Heinrich case, which is a little bit different, because there the question really was whether there was actual physical evidence that was contemporaneous with the officer's statement. And there wasn't a question of an expert's view of what the physical evidence was. So it seems like it's a little bit different. Do you have one where the expert's opinion somehow becomes the physical evidence in effect? No, other than, no, I don't have a specific case. In a standard jury trial of a case like this, if the first shooting went to a jury, a reasonable jury could believe the expert and not believe Mr. Wade, correct? Just correct or incorrect? Well... I'm trying to help you here, man. Yeah, well, that's true. But, on the other hand, a reasonable jury, given the standard instructions that are given at trials of this type, could believe Mr. Wade and disregard the expert, correct? Correct. Although... So what's wrong with what the district court did on the first shot? And that goes back to that split second of the time at the time of the shooting. Because at that point in time, Mr. Wade has not clearly established, he hasn't even stated, that at that moment his hands were up. So it's, there isn't any evidence that says his hands were up at the time he was shot. The expert says physically his hands could not have been. So there is no rebutted fact, or there is no dispute of material, genuine issue. But a reasonable jury could disregard your expert and believe Mr. Wade? But if they believed Mr. Wade, they still would not have the fact established that his hands were up at the moment of the shooting. Well, they said his hands were up when he got out of the vehicle? And the mom says that, right? Yes. So you're kind of relying on this split second. But if the jury says, well, you know, I listened to that expert, and I'm really not so sure about that kind of ballistics testimony, so I don't believe him. Now, he may well be highly believable once he gets there. But so the jury says, I don't really believe that. So the last, the only thing the jury knows at that point is, hands up, and there you have it. For purposes of this court's de novo review, as well as the district court, you take the facts in the best light to the plaintiff. And in this particular case, the inference isn't even established. It's left open, is what I'm arguing, is that at the time of the shooting, mom doesn't see him. He doesn't specifically say, my hands were up. So a reasonable inference would be, for a reasonable officer in those like circumstances, to believe that if he dropped his hands, then he was in a noncompliant state, and he was aggressing, he was moving towards him, and it was a dangerous situation that was escalating. Did the district court deny qualified immunity as to both events? If we can separate the first shot and the second shot. It was just an outright denial of qualified immunity. I don't know that the judge in the lower court really, I mean, I don't think that she did. Let me put it this way. He didn't bifurcate them and say, reasonable question of fact on the first shot, qualified immunity on the second. That didn't happen, correct? Correct. My question to you is, could this case be tried factually on the first shot alone? Yes, if qualified immunity is. If the jury believed you're expert? Then that would be a question for the jury at that time. They're a very happy client. But would you address the second shooting? Because circumstances do change at that point. Even though Judge Delden seemed to have distinguished, what's your argument there in terms of whether there was a violation of clearly established law? Well, my argument in all of it is that, based upon that there is no clearly established law as defined by a United States Supreme Court, and my position is that the U.S. Supreme Court and Taylor and Sheehan and Mullinex has made it clear that you have to look for a U.S. Supreme Court case, not just another Ninth Circuit case or a compilation of robust circuit case law, and that in this particular case the articulation of the circumstances would be a suspect, partially compliant, deadly force would be unreasonable if the suspect is dangerous, threatening, or as perceived by the officer. How much, do we know how much time elapsed from when Mr. Wade exits his vehicle, whether his hands were up or down, and the firing of the second series of shots? How much total time elapsed? On the radio log, I believe that the first shots occurred about seven, about nine, eight minutes after the first call, and that was when the first shots were fired, but then thereafter it might have just been a minute or two because at that point Mr. Wade, first of all, Mr. Wade has no recollection whatsoever of the second shooting, so from that point on. I'm just trying to get in my mind whether it was two minutes, three minutes, 90 seconds. Is this part of the record from the minute Mr. Wade gets out of his vehicle until the last shots are fired and Wade is on the ground? I don't think that there's been any testimony in the record. So we have the video, right? We have the video after Wade gets up from the first shot. Then we see him coming, which appears to be about, he gets as close as what, a couple of feet from the officer? Correct. And that's when the second shooting, so it seems to me you really do have to bifurcate these, and at that point I assume from reading the briefs his argument is, holy cow, the guy is like right here, he's coming at me. And he's been shot. And I've already shot the guy and now he's still after me. Right. And that at any time he would overpower him, possibly take his gun. He doesn't know about. About the same size as the officer. And you can see the aggressiveness on that video. It reminds you of the Billington case. So under those circumstances, the law, there is qualified immunity on the second shooting without a doubt. Do you want to save some time for rebuttal? Yes. Thank you. Your Honors, my name is Ron Coulter, and I represent Mr. Jamie Wade, who's the plaintiff in this particular case. And Mr. Wade ultimately survived this event, right? Yes, sir. Yes, Your Honor, he did survive. That's a good thing. Okay. And is he disabled in any way? He's lost some motion. I think in his arm he got shot and et cetera, but he is working at a halfway house right now. He's got a severe alcohol problem. Okay. I would say he's in the custody of the Idaho Correctional System. Okay. Which is a good thing. He looks good in jail. So this is the one instance, and I was tempted simply just to rely on my brief and supporting documents and say this because I just don't know how I can improve on my brief and oral argument. Well, you're welcome to sit on your brief if you want. It's your choice. Well, I'm a lawyer and I just can't help myself. Of course. You can hurt yourself. I can hurt myself. But what I would do is I simply encourage the court to stop me in my ramblings and get to the heart of the matter that concerns the court. Obviously you've read the brief and there's questions that you may have. I am particularly interested in that second shooting because in terms of being objectively reasonable whether one could fire a deadly shot, he has this gentleman who's already injured, and he gets up and he doesn't just stop or lie there and wait to see what happens. He comes right at the officer, and the officer is in fear for his life basically. So I suppose my question for you is that I'm hard-pressed to understand why the officer wouldn't get qualified immunity in that case. Well, there's an assumption that the court's making that he's stated that he's in fear for his life, and that that is a reasonable assumption to make based on the facts of the case. The hardest part for me in this whole case is not testifying with my experience. I'm looking at the video, which I've looked at and looked at, and that evidence, it is what it is. It is what it is, Your Honor. So why wouldn't an officer, a reasonable officer, put in that situation, knowing that having just had the backdrop of shooting number one, justified? You have to look at all the facts, and the facts on the record basically are that Officer Copeland had advanced training. He was, I guess, involved in special weapons and tactics. If you look at that video, there's no way you can see a weapon in the hand. He also knew that my client had been wounded. Well, is part of the answer that the law doesn't impose a duty to retreat? Well, the law does not impose a duty to retreat. And so the corollary to that, is it not, that you can shoot again? If it's justified based on the facts. Well, but if there's no duty to retreat, and if you fired one shot, and the individual doesn't go down from that one shot, and by the way, I think we would all agree, a lot of officers wouldn't have limited themselves to one shot. Well, actually, I think he's fired five shots in total, two hit. Okay. Right. So why, the officer has a choice now. Retreat, well, I guess the three options are to retreat, engage in some kind of hand-to-hand, or shoot. I mean, I think that's the whole universe of the officer's options in this circumstance. And the law seems to privilege the officer, having discharged, as you've reminded me, multiple shots, to continue shooting when the individual is closing in on him like that. Well, I think you have to look at the video. I mean, I've looked at that video. Oh. You can look and look and look. 5,000 times, too. But kind of what you see is. But what I see is. What are you seeing different? What I see is that there's a couple of things. Number one, that Officer Copeland knew that he had backup. He also knew that there was no weapons. You look at that dispatch on the record. It says, no weapon. But he doesn't have to retreat. Well, he doesn't have to retreat, but he has to act reasonable. He couldn't have felt that his life was threatened. He just shot the guy. And this has always been something that I've looked at. He knows he hit him. All right. Now, he's got shot twice. And then when all of a sudden he drops when he fires the shots, all of a sudden Carter's up there. I think the thing that got me the most on this was when Officer Carter says, well, where's the weapon? That told me that if you're using force in this particular situation, there should be a weapon there. Cops don't ask questions like, where's the weapon, if there's not a reason to ask the question. And so when you look at it, you know you shot someone. You know you can see clearly in the video there is no weapon in Mr. Wade's hands. And obviously this is where the experts come in in some respects. And I do note that Judge Dale was interesting. He says, you know, nobody disputed the experts in regards to whether or not it was reasonable or not. You had two law enforcement officers. I think Mr. Meyer was involved in the Ferguson scenario. And my primary witness. And they both were looking at it with experience and going, nope and yes. And when you have no and yes, you have a clear dispute of material fact that needs to go to a jury, which is why the Ninth Circuit says that generally in these types of cases, summary judgment is rarely granted because the facts are in dispute. And as was pointed out in this case, a jury could believe one person. A jury could believe the other person. And there you have it. But isn't this more a clearly established question than a reasonableness question? Well, I think they're both. Actually, I don't want to give up on one. But you've got to win on both. Yeah. Well, I have to win on both. So I look at it was that the officer was unreasonable, and I think there's a dispute in that regard from regards to the facts. But the clearly established, well, as we all know, you can't shoot a person when their hands are up. You don't even have to be a lawyer. You don't even need case law, even though there is case law, Tennessee v. Gardner and a few others. But if a person is compliant and their hand's up, it's hands up, don't shoot. Let me ask you the same question I asked your opposing counsel. Could you try this case on the first shot? Oh, yes. With no evidence about the second? In other words, if I'm just asking. Well, yes. Because that will determine that the officer is entitled to qualified immunity on either prong on the second series of shots. Yes, I think you are. And we sent it back to the district court saying try it on the first shot alone. You could try it. I could try that case. But I wouldn't want to do that. But you don't want to. I'd rather try to do both. You want the whole sequence. I want to hold that officer accountable. There's a number of reasons I want to do that. Don't you think you're reducing your client's chances of success? I didn't understand that question. Don't you think by arguing to try the entire scenario factually in front of a jury, as opposed to trying just the first shot, you're reducing your client's chance of success? Not on the first and not on the second. Here we are. We're at summary judgment. And so we're not actually looking at the evidence there, all the evidence that's there. We're looking at it as a matter of law. Can you dismiss the case? I believe as we move forward on this, we'll be able to establish the facts. Also, then you have not only do you have expert witnesses, you have rebuttal expert witnesses to do things. And the beautiful thing about our country and our system is that eventually we get down to king's justice. And quite frankly, that's the jury. Can I ask a question just for personal knowledge unrelated to the facts of this case? What county is Eagle, Idaho in? Ada County, Your Honor. Is it near a boundary? No, Your Honor. We're down south. We're just right next to Boise. We're actually Boise.  We're just like next door. We're the better part of Boise. It's the geography. I think Judge Hawkins was really on to something important from your perspective. I can easily imagine an honest juror acting in utmost good faith who learns that there was this second shooting could really undermine the probative value that the plaintiff assigns to the first shooting. You don't see it that way. You know, you go to trial. I'm not saying that would be particularly rational from a strictly logical perspective, but people are people. People aren't always rational. Well, to answer your question, Your Honor, yes, it could happen that way. I just believe when all the facts are brought out, when you put that officer on the stand, you put my client on the stand, you put the mom on the stand, I love Officer Carter because we're not going through all of his depositions. We're looking at whether or not there was a legal justification and that type of thing. You know, I think we have a shot. I'm a riverboat gambler. I've been a public defender, military lawyer. You know, I kind of like to take chances. What branch? United States Marine Corps, sir. Semper Fi. Right. So it's just the way I was trained, the way I was brought up. You know, go big or stay on the bench is the way I look at it. Is there any more questions? No, there's not. Thank you. If you want some of my time, you can have it. That's generous of you. Get along really well. That's the nice thing about Idaho lawyers. That's right. We like. That's why we love Idaho and Montana lawyers. Okay, I'll take Montana as well. And Seattle lawyers. You know, let me address one thing. Even with his hands up, okay, in the first shooting, Mr. Wade was still aggressing. He was not getting to the ground. He was not stopping. Whether he had a weapon or not was unknown. And if you take into consideration the video from the second, his hands were up there. He's like this coming at him. And so the risk of him, as Judge Davis pointed out, you know, the options are still the same in the first shooting. Retreat, hand-to-hand, or shoot. So does the officer know that in the 911 call that they've said he's drunk? Yes. Does the officer know that the day before he had said, I don't care if I get shot? That's right. That officer does know that. Yes, because Deputy Carter had contacted him on the radio and said, I need you to know that last night he called and wanted SWAT to come out. And then also Copeland knew that in September, just a couple of months earlier, that he had responded to a call where Mr. Wade had attempted suicide with a large double-edged dagger knife. But we don't have any weapons that have been suggested or corroborated. This is a weaponless situation. That's correct. But in the record, it establishes that it was unknown whether there was weapons in several places, 143 and 148 and 279, I believe. So you still have the same situation. So here, this is a clearly established case law issue, because you don't have a situation where, again, you have a Supreme Court case that says a partially noncompliant, threatening, aggressive suspect coming at you with, again, we don't look at 20-20 hindsight. It's the split-second decision that the officer has to make with all of the facts that he has at that point in time. Even without the issue of whether his hands are up or not, he still has the qualified immunity. And as to, I just want to address this one issue, if this went back and we tried the first shooting, I would not be stipulating that the second shooting does not have any relevance, because it also shows the state of mind that Mr. Wade was in, because it continued based upon what he said to the officer as well as what he did. Sounds like you'd have another issue for appeal, right? Evidentiary issue. I love the Ninth Circuit. Thank you very much. Thank both of you, counsel, and also for your collegiality. The case just argued, Wade v. Copeland, is submitted and we're adjourned this morning.
judges: Hawkins, McKeown, Davis